1  Heather L. Rosing, Bar No. 183986
2  Earll M. Pott, Bar No. 156516
   Tara R. Burd, Bar No. 276676
3  KLINEDINST PC
   501 West Broadway, Suite 600
4  San Diego, California 92101
   (619) 239-8131/FAX (619) 238-8707
5  hrosing@klinedinstlaw.com
   epott@klinedinstlaw.com
6  tburd@klinedinstlaw.com

7  Attorneys for George Rikos and the Law
8  Offices of George Rikos

9

10

11                **UNITED STATES DISTRICT COURT**

12              **SOUTHERN DISTRICT OF CALIFORNIA**

13

14  In re                          U.S.D.C. Case No.: **'20CV0871 JAH BLM**

15  DOMI Publications, LLC,         Bankruptcy Case No. 20-10250-btb
                                    (Bankr. D. Nev.)
16          Debtor.
                                    Chapter 7
17
                                    **MEMORANDUM OF POINTS AND**
18                                  **AUTHORITIES IN SUPPORT OF**
                                    **DOMI PUBLICATIONS, LLC'S**
19                                  **MOTION TO QUASH OUT OF**
                                    **DISTRICT SUBPOENAS**
20
                                    Date:        To be set.
21                                  Time:        To be set.
                                    Crtrm.:      To be set.
22

23

24

25

26

27

28

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

1

**TABLE OF CONTENTS**

I.   Introduction ................................................................................................... 1

II.  Procedural Background .................................................................................. 3

III. The Court Must Not Countenance the Use of a Rule 2004 Examination to

Collect Discovery for Pending Litigation in Another Forum ............................. 5

IV.  The Court Must Quash the Subpoenas Because They Manifest a Complete

Disregard for the Work Product Doctrine and Constitute a Gross Intrusion into

Communications that Are Privileged ................................................................ 7

A.  The Subpoenas Seek Protected Attorney Work Product ................................... 9

B.  The Subpoenas Seek Communications Protected by the State Court Action's

Defendants' Joint Defense Agreement .......................................................... 12

V.  The Court Must Quash or Modify the Subpoenas because the Sweeping

Document Requests Constitute an Oppressive Burden and There is Insufficient

Time for Rikos to Comply ............................................................................ 14

A.  The Subpoenas are premature because Creditors failed to take reasonable

steps to mitigate the burden on Rikos ........................................................... 16

B.  The Subpoenas are overbroad, unnecessary, and unmanageable ................... 17

C.  Rikos lacked time to adequately respond to the Subpoenas .......................... 18

D.  Rule 45 Requires the Creditors to pay the significant costs of compliance .... 18

VI.  Conclusion ................................................................................................. 19

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

i

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

# TABLE OF AUTHORITIES

**Cases**

*Boeing v. Coggeshall,* 280 F.2d 654, 670 (D.C.Cir. 1960) .......................................15

*BP Alaska Expl., Inc. v. Superior Court*, 199 Cal. App. 3d 1240, 245 Cal. Rptr. 682, 690-91 (Cal. Ct. App. 1988) ................................................................................10

*Citizens for Ceres v. Superior Court*, 217 Cal. App. 4th 889, 159 Cal. Rptr. 3d 789, 803 (Cal. Ct. App. 2013) ..................................................................................9

*Commodity Futures Trading Comm'n v. Weintraub,* 471 U.S. 343 (1985) ............8, 9

*Continental Oil Co. v. United States*, 330 F.2d 347 (9th Cir. 1964)..................12, 13

*DP Pham, LLC v. Cheadle*, 246 Cal. App. 4th 653, 200 Cal. Rptr. 3d 937, 947 (Cal. Ct. App. 2016) ..............................................................................................10

*Freeman v. Seligson,* 405 F.2d 1326, 1336 (D.C.Cir.1968)....................................15

*Hawkins v. Kroger Co*., No. 3:15-cv-02320-JM-AHG, 2020 U.S. Dist. LEXIS 72311, at *19 (S.D. Cal. Apr. 23, 2020) (S.D.C.A.) ............................................15

*Hawkins*, 2020 U.S. Dist. LEXIS 72311 at 59 .................................................7, 9, 10

*Haworth, Inc. v. Herman Miller, Inc.,* 998 F.2d 975, 978 (Fed. Cir. 1993)..............16

*Herron v. Blackford,* 264 F.2d 723, 725 (5th Cir.1959)............................................6

*Hickman v. Taylor*, 329 U.S. 495 (1947).......................................................9

*Hofer v. Mack Trucks, Inc.,* 981 F.2d 377 (1992) ...........................................14

*In re Blinder,* 127 B.R. 267, 276 (D.Colo.1991)..........................................6

*In re Coffee Cupboard, Inc*., 128 B.R. 509, 516 (Bankr. E.D.N.Y. 1991)..................6

*In re Drexel Burnham,*123 B.R. 702, 712 (Bankr.S.D.N.Y.1991)............................6

*In re Enron Corp*., 281 B.R. 836, 842 (Bankr. S.D.N.Y. 2002) ..............................6

*In re GHR Energy,* 35 B.R. 534, 536 (Bankr. D.Mass.1983) ....................................6

*In re Grand Jury Subpoenas, 89-3 & 89-4, John Do 89-129 (Under Seal)*, 902 F.2d 244, 249 (4th Cir. 1990) ................................................................................12

*In re Grand Jury*, 902 F.2d at 249 ............................................................13

*In re Hammond*, 140 B.R. 197, 201 (S.D.Ohio 1992)....................................5, 14, 15

ii

*In re Murphy*, 560 F.2d 326, 334 (8th Cir. 1977)........................................................11

*In re Public Service Co.,* 91 B.R. 198 (Bankr. D.N.H.1988) ..........................................6

*In re SunEdison, Inc*., 572 B.R. 482, 490 (Bankr. S.D.N.Y. 2017) ............................6

*In re Vantage Petroleum,* 34 B.R. 650, 651 (E.D.N.Y. 1983) ......................................6

*In the Matter of Wilcher,* 56 B.R. 428, 434 (1985) ...................................................15

*Legal Voice v. Stormans, Inc.*, 738 F.3d 1178, 1184 (9th Cir. 2013).......................18

*Linder v. Calero-Portocarrero*, 251 F.3d 178, 182 (D.C. Cir. 2001 .......................18

*McKenzie v. McCormick*, 27 F.3d 1415, 1420 (9th Cir. 1994) ................................10

*Roberts v. Shawnee Mission Ford, Inc.*, 352 F.3d 358, 361 (8th Cir. 2003)..............6

*Wiwa v. Royal Dutch Petroleum Co*., 392 F.3d 812, 818 (5th Cir. 2004) ...............15

**Statutes**

Bankruptcy Rule 2004 .........................................................................................5, 6, 7

Cal. Civ. Proc. Code, § 2018.030 .....................................................................10, 11

Cal. Evid. Code § 915(a) ........................................................................................10

Fed. R. Bankr. P 7025-7036 .....................................................................................7

Fed. R. Bankr. P. 2004.............................................................................................5

Fed. R. Civ .P. 26(b)(1) .............................................................................7, 14, 15

Fed. R. Civ. P 502....................................................................................................11

Fed. R. Civ. P. 45(d)(1) .....................................................................................15, 16

Fed. R. Civ. P. 45(d)(2)(B)(ii) ................................................................................18

Fed. R. Civ. P. 45(d)(3)(A)(iii)................................................................................7

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DOMI PUBLICATIONS, LLC'S
MOTION TO QUASH SUBPOENAS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

# I.

## Introduction

George Rikos and the Law Offices of George Rikos (collectively, "Rikos") request that this court issue an order quashing the Subpoenas served on them by Creditors Jane Does 1-22 ("Creditors") on April 27, 2020.  True and correct copies of the Subpoena to Produce Documents, Information, or Objection or to Permit Inspection of Premises in a Bankruptcy Case (or Adversary Proceeding) and Subpoena for Rule 2004 Examination (collectively, the "Subpoenas") are attached to the Declaration of George Rikos ("Rikos Decl.") as Exhibit ("Ex.") "A"; ¶ 16.

The Subpoenas were served on Rikos, who is counsel of record in a pending state court action for DOMI Publications, LLC, doing business as MomPOV.com ("DOMI"), an action that is being prosecuted by Creditors. Rikos Decl., ¶ 3.  DOMI is also the debtor in the instant bankruptcy action pending in the Nevada Bankruptcy Court. Request for Judicial Notice in Support of DOMI Publication, LLC's Motion to Quash Out of District Subpoena ("RJN"), ¶ 5. Although purportedly issued under Bankruptcy Rule 2004, which permits examinations to investigate the acts, conduct, property, liabilities and financial condition of the debtor, Fed. R. Bankr. P. 2004, the Subpoenas call for the indiscriminate production of an immense cache of documents related to Rikos's representation of DOMI in a California state court action which spanned four years, included over 3100 entries in the Register of Action, and resulted in the exchange in discovery of hundreds of thousands of pages of documents.[1] Rikos continues to represent DOMI as of this filing. Rikos Decl., ¶ 23.

---

[1]     For example, a key word search in Rikos' email database for "Jane Doe" generated over 7400 responsive emails, and keyword search for "DOMI" generated over 1100 responsive emails. Rikos Decl., ¶ 26. Rikos's electronic trial folder alone has 22 gigabytes of pdfs, consisting of thousands of pages of materials and the underlying trial included approximately 5,000 exhibits. *Id.*

With the instant Subpoenas, Creditors seek to take advantage of Federal Bankruptcy procedure to conduct discovery which would never have been permitted in the underlying litigation – specifically, taking the deposition of opposing counsel and reviewing his entire case file. Creditors attempted, on <u>five</u> occasions, to subpoena opposing counsel for testimony and documents in the same state court action, and were steadfastly denied by the Honorable Joel Wohlfeil. Rikos Decl., ¶ 12. In fact, Judge Wolhfeil stated:

> I cannot begin to emphasize how reluctant I am to allow a lawyer to become a witness in this case. And at the moment one side or the other wants to schedule counsel's deposition, you are characterizing him or her or they as a witness.
>
> The court will not, absent an awfully good reason to the contrary, allow that to occur in this department. This case is about your respective clients, the parties. It's not about the lawyers.
>
> * * *
>
> So a request to take opposing counsel's deposition for any purpose is denied.

Rikos Decl., ¶ 22, Ex. C.

Repeatedly rebuffed by the California Superior Court and realizing the bankruptcy may be dismissed as soon as July by way of a motion filed by the United States Trustee' office, Creditors are once again trying to depose an opposing counsel in the underlying litigation. In addition, they seek production of the entire client file, including all of Rikos's work product, confidential communications with codefendant counsel that is protected by a joint defense agreement and the common interest privilege, and a welter of irrelevant communications with client representatives, retained experts, and percipient witnesses. And Creditors have sought production of all this material in less than two weeks.

As explained below, the Creditors' abuse of Rule 2004 and brazen disregard for attorney work product and confidentiality should not be tolerated.

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

## II.

## Procedural Background

On June 2, 2016, a subset of the Creditors filed an action against three individuals and ten entities, including DOMI, as San Diego Superior Court Case number 37-2016-00019027-CU-FR-CTL. RJN, ¶ 1. Related actions were later filed in 2017, as San Diego Superior Court Case numbers 37-2017-00033321-CU-FR-CTL and 37-2017-00043712-CU-FR-CTL. RJN, ¶¶ 2, 3. All three matters were eventually consolidated as *Jane Does 1-22 v. GIRLSDOPORN.COM, et. al.*, and are hereinafter referenced collectively as the "State Court Action."

When DOMI was sued in 2016, it was owned 50-50 by Michael J. Pratt, who is also a defendant to the State Court Action, and Douglas Wiederhold. Rikos Decl., ¶ 5. Wiederhold was later added to the State Court Action, but was dismissed without prejudice on October 27, 2017. Rikos Decl., ¶ 7. Pratt, Wiederhold, and DOMI always maintained separate counsel. Rikos Decl. ¶ 5. Pratt sold his interest in DOMI to Wiederhold shortly before trial in the State Court Action and is now a fugitive, facing an arrest warrant and federal charges in *United States v. Michael J. Pratt, et. al.,* U.S. District Court, Southern District of California, Case No. 3:19-cr-04488-JLS-1. Rikos Decl. ¶ 9; RJN, ¶ 4. Neither DOMI nor Wiederhold is named in the criminal case.

The State Court Action was adjudicated after a 99 day trial, resulting in a statement of decision in favor of the Creditors in an amount in excess of $12 million, for which DOMI is now jointly and severally liable. Rikos Decl., ¶ 11. No judgment has been entered; the case is still pending. Rikos Decl., ¶ 23. Although DOMI and Pratt were separately represented, they and their counsel entered into a joint defense agreement for the conservation of efforts and resources during litigation and at trial. Rikos Decl., ¶ 8. The codefendants and their counsel understood that they would work together on matters of common interest and that their communications concerning defense strategy would be held in confidence. *Id.*

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DOMI PUBLICATIONS, LLC'S
MOTION TO QUASH SUBPOENAS

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

1    On January 16, 2020, DOMI filed Chapter 7 bankruptcy in the District of

2    Nevada. RJN, ¶ 5.  In its petition, DOMI listed $32,278.84 in assets and

3    $12,928,024.12 in liabilities, consisting primarily of the $12 million judgment. RJN,

4    ¶ 7.  The bankruptcy filing resulted in an automatic stay of the pending State Court

5    Action, and a related appellate action which had been pending since 2018.[2]  On May

6    5, 2020, however, on motion by the Creditors, the Bankruptcy Court lifted the stay

7    on the State Court action. RJN, ¶ 6. Rikos remains counsel in the State Court Action

8    as well as a related appellate court action. Rikos Decl., ¶ 23.

9    On March 2, 2020, the United States Trustee filed a Motion for Abstention

10   under Section 305, moving the court to abstain by dismissing the case, or, in the

11   alternative, to dismiss the case for cause, and to direct the vesting of estate property

12   in the State Court Receiver. RJN, ¶ 8. United States Bankruptcy Court, District of

13   Nevada (Las Vegas) Docket for Bankruptcy Petition 20-10250-tbt for Debtor,

14   DOMI ("Dkt") # 34. RJN, ¶ 6; Ex. D.  That motion was rescheduled several times

15   and is now to be heard on July 28, 2020. *Id.* If this motion is granted, the

16   Bankruptcy action will be dismissed and DOMI's assets will be in the hands of the

17   State Court Receiver.  Moreover, any standing or jurisdiction held by the Trustee

18   will end.  Significantly, and as discussed below, this includes any attorney client

19   privileges held by the Trustee.

20   Despite the pendency of the foregoing motion, on April 6, 2020, the Creditors

21   filed Ex Parte Motions to conduct several 2004 Examinations, including the

22   depositions of Wiederhold, DOMI [Dkt #66], and DOMI's current counsel, Rikos

23   [Dkt #65] which were granted on April 13, 2020 [Dkt #70-72]. RJN, ¶ 9; Ex. D.

24   Rikos was not served with notice of, nor afforded an opportunity to oppose, the ex

25   parte motion.

26

27   [2]    Defendants in the State Court Action filed appeals of anti-SLAPP motion
     denials in *Does, et. al. v. GIRLSDOPORN.COM et. al*., D074514. This appellate
28   court action was stayed as a result of DOMI's bankruptcy filing. RJN, ¶ 11.

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DOMI PUBLICATIONS, LLC'S
MOTION TO QUASH SUBPOENAS

On April 27, 2020, the Creditors served Rikos with the Subpoenas summoning him to appear and to produce documents on May 11, 2020 – a mere 14 day's notice. Rikos Decl., ¶ 16, Ex. A.  The document requests identify fifteen sweeping topics, which require Rikos to produce "All DOCUMENTS and COMMUNICATIONS (including those on which [he was] cc'd or copied or otherwise received…." *See* Ex. A. Topics include Rikos's legal strategy, the legal fees and costs incurred by DOMI, settlement offers made and considered, retainer agreements, joint defense agreements, and other documents directly related to Rikos's representation of DOMI in the State Court Action.  The requests, protected by attorney-client privilege and attorney work product doctrine, are unduly burdensome, and, if production is required, would require significantly more than fourteen days to collect the thousands of emails and other correspondence generated during the course of the State Court Action.

On May 5, 2020, the Bankruptcy Trustee waived the attorney-client privilege that would otherwise be afforded to protect communications by and among the Debtor and the Debtor's counsel.  The Trustee may only be the holder of this privilege until July, when the motion to dismiss is heard.

### III.

### The Court Must Not Countenance the Use of a Rule 2004 Examination to Collect Discovery for Pending Litigation in Another Forum

It is improper for the Creditors – plaintiffs in the State Court Action – to take advantage of Bankruptcy Rule 2004 to obtain discovery from their opposing party, including their strategies, privileged communications, and attorney work product.

The contested Subpoenas have been specifically issued under Fed. R. Bankr. P. 2004, which limits its scope to acts, conduct, property, liabilities and financial condition of the debtor, DOMI. The primary purpose of an examination under Rule 2004 is to permit the trustee to ascertain the extent and location of the estate's assets. *In re Hammond*, 140 B.R. 197, 201 (S.D.Ohio 1992).  A party-in-interest may also

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

1   conduct the exam. *In re GHR Energy,* 35 B.R. 534, 536 (Bankr. D.Mass.1983).  But,

2   while the scope of Rule 2004 is broad, it is not without limits. *In re Blinder,* 127

3   B.R. 267, 276 (D.Colo.1991).

4         Rule 2004 requires the Court to balance the competing interests of the parties,

5   by weighing the relevance and necessity of the information sought by the

6   examination. *In re Drexel Burnham,*123 B.R. 702, 712 (Bankr.S.D.N.Y.1991). This

7   requires a balancing of the creditor's right to obtain information related to the

8   debtor's financial condition against "the incalculably precious right of the citizen to

9   be let alone."  *In re Vantage Petroleum,* 34 B.R. 650, 651 (E.D.N.Y. 1983), *quoting*

10  *Herron v. Blackford,* 264 F.2d 723, 725 (5th Cir.1959).  Documents which meet the

11  requirement of relevance do not, standing alone, demonstrate that there is good

12  cause for requiring their production; necessity is vital to establishing good cause.

13  *Id.; In re Public Service Co.,* 91 B.R. 198 (Bankr. D.N.H.1988). Whatever the

14  discovery sought, this Court has "discretion to limit discovery if . . . the burden or

15  expense of the proposed discovery outweighs its likely benefit." *Roberts v. Shawnee*

16  *Mission Ford, Inc.*, 352 F.3d 358, 361 (8th Cir. 2003).

17        Setting aside the burden to the subpoenaed party, the Creditors' requests, if

18  granted, would severely prejudice DOMI by affording its adversary otherwise

19  protected insights into its litigation strategies.  A party in a pending litigation may

20  not seek one-sided discovery through Rule 2004. See, e.g., *In re Enron Corp*., 281

21  B.R. 836, 842 (Bankr. S.D.N.Y. 2002) (ruling that courts are concerned with using a

22  Rule 2004 examination in pending litigation outside the bankruptcy court*); In re*

23  *SunEdison, Inc*., 572 B.R. 482, 490 (Bankr. S.D.N.Y. 2017) (holding that a party in

24  pending litigation cannot seek one-sided discovery through Rule 2004); and *In re*

25  *Coffee Cupboard, Inc*., 128 B.R. 509, 516 (Bankr. E.D.N.Y. 1991) (holding that a

26  party in pending litigation before another body should not obtain information

27  through Rule 2004 examinations). Rikos urges this Court to be mindful of the

28  manifest abuse of Rule 2004 in this instance, as Creditors seek sensitive, protected

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

6

1    information which they can and should seek in the California Superior Court.  The

2    fact that they have thus far been unsuccessful is not a reason to sanction forum

3    shopping and an expansion of the scope of a Rule 2004 examination beyond

4    recognition.

5                                                    **IV.**

6    **The Court Must Quash the Subpoenas Because They Manifest a Complete**

7    **Disregard for the Work Product Doctrine and Constitute a Gross Intrusion**

8                       **into Communications that Are Privileged**

9           Privileged matters are not generally discoverable.[3] Fed. R. Civ .P. 26(b)(1).

10   The burden of establishing an exception to privilege is on the party claiming the

11   exception, and if no exception or waiver applies, the court must quash or modify the

12   subpoena. Fed. R. Civ. P. 45(d)(3)(A)(iii).[4]

13          Each of the Creditors' document requests unquestionably seeks attorney-client

14   privileged communications and attorney work product.  Most demonstrative of this

15   point is the following:

16          1.      All DOCUMENTS and COMMUNICATIONS (including those
             on which YOU were cc'd or copied or otherwise received, even if you

17          did not take part in the substantive discussion) in YOUR possession,
             custody or control regarding or related to the following topics:

18          * * *

19          h.      YOUR legal strategy representing DOMI in the STATE COURT
             ACTION.

20

21   Rikos Decl., Ex. A. This impertinent demand would never pass muster in an

22   adversarial civil proceeding, nor should it here. Rikos anticipates the Creditors will

23

24   _____

25   [3] The Federal Rules of Civil Procedure apply to discovery and subpoena matters in
     bankruptcy.  *See* Fed. R. Bankr. P 7025-7036, and 9016.

26   [4]      California privilege law applies as to the relationship between Rikos and

27   DOMI, whose relationship arose in the State Court Action. *Hawkins*, 2020 U.S.
     Dist. LEXIS 72311 at 59 ("'state law governs privilege regarding a claim or defense

28   for which state law supplies the rule of decision.'" [Citation omitted.])

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

7

1   rely on the bankruptcy trustee's waiver of privilege to overcome their burden, but,

2   for the reasons set forth below, that waiver should not be extended to allow the

3   Creditors' requests.

4        In 1985, the United States Supreme Court held that the trustee of a

5   corporation in bankruptcy has the power to waive the corporation's attorney-client

6   privilege with respect to pre-bankruptcy communications. *Commodity Futures*

7   *Trading Comm'n v. Weintraub,* 471 U.S. 343 (1985). In its analysis, the Court first

8   considered the role the trustee plays, and analogized it to the role of a corporate

9   officer or director. *Id*. at 352-353. It concluded that because the trustee plays the role

10  of an insolvent corporation's management, it should also hold the corporation's

11  attorney-client privilege. *Id*. at 353.

12       The *Weintraub* Court then considered the federal interests that may be

13  impacted by its decision and stated:

14           In seeking to maximize the value of the estate, the trustee must
             investigate the conduct of prior management to uncover and assert
15           causes of action against the debtor's officers and directors. *See
             generally* 11 U.S.C. §§ 704(4), 547, 548. It would often be extremely
16           difficult to conduct this inquiry if the former management were
             allowed to control the corporation's attorney-client privilege and
17           therefore to control access to the corporation's legal files. To the
             extent that management had wrongfully diverted or appropriated
18           corporate assets, it could use the privilege as a shield against the
             trustee's efforts to identify those assets. The Code's goal of uncovering
19           insider fraud would be substantially defeated if the debtor's directors
             were to retain the one management power that might effectively
20           thwart an investigation into their own conduct.

21  *Weintraub,* supra, 471 U.S. at 353.

22       In sanctioning the waiver of the attorney-client privilege over the debtor's

23  former directors' objection, the Court sanctioned the examination of Weintraub, the

24  debtor's lawyer, by the Commodity Futures Trading Commission. In this case,

25  however, the subpoenaing party is *not* the Bankruptcy Trustee nor a federal agency

26  conducting a criminal investigation. Instead, the deliberate and sensitive task of

27  reviewing privileged documents and delving into the opinions and strategies of the

28  debtor's attorney has been left to the Creditors.  And not just any creditor, but

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

8

1  Creditors who are adverse parties who have already been denied the very same

2  access to the privileged attorney client communications and attorney work product

3  they now seek, by the San Diego Superior Court, and who would derive a direct and

4  immediate advantage in the pending State Court Action and appeal.

5  The Supreme Court in *Weintraub* was simply not presented with a situation

6  where the Trustee, in exercising his discretion to waive the privilege, then delegates

7  to a creditor the task of pursuing the waiver, much less a creditor currently adverse

8  to the subpoenaed party in pending actions.  Citing to Congress, the Court stated,

9  "The extent to which the attorney client privilege is valid against the trustee is

10  unclear under current law and is left to be determined by the courts on a case by

11  case basis." *Weintraub* at 352, *citing* 124 Cong. Rec. 32400 (1978) (remarks of Rep.

12  Edwards; *id*., at 33999 (remarks of Sen. DeConcini). In this particular case, this

13  Court should not sanction the implementation of an attorney-client privilege waiver

14  to a party presently adverse to DOMI in pending state proceedings and should quash

15  the Creditor's subpoena on those grounds.

16  **A.    The Subpoenas Seek Protected Attorney Work Product.**

17  The *Weintraub* court did not consider whether a Trustee has the power to

18  waive the attorney work product doctrine in the context of pending litigation.  It

19  certainly did not contemplate the forced disclosure of communications, opinion, and

20  strategy to an adversary.  At a minimum, Rikos urges the court to decline to extend

21  the Trustee's authority to waive protected attorney work product, as the attorney, not

22  the client, holds the right to decide whether to disclose his thoughts, strategies, and

23  opinions. *Hawkins* at 73 citing *Citizens for Ceres v. Superior Court*, 217 Cal. App.

24  4th 889, 159 Cal. Rptr. 3d 789, 803 (Cal. Ct. App. 2013).

25  In 1974, the United States Supreme Court considered the importance of the

26  "work product of the lawyer" on balance against the need for liberal discovery.

27  *Hickman v. Taylor*, 329 U.S. 495 (1947), superseded by statute. The *Hickman* Court

28  concluded that if an attorney's work product were required to be produced then,

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

9

1      An attorney's thoughts, heretofore inviolate, would not be his own.
2   Inefficiency, unfairness and sharp practices would inevitably develop
    in the giving of legal advice and in the preparation of cases for trial.
3   The effect on the legal profession would be demoralizing. And the
    interests of the clients and the cause of justice would be poorly served.

4   *Id* at 511, *see also McKenzie v. McCormick*, 27 F.3d 1415, 1420 (9th Cir. 1994)

5   (finding that interview notes were protected work product.)

6       The principles set forth in *Hickman* have been codified under California Civil

7   Code of Procedure section 2018.030, which protects the discoverability of attorney

8   work product, and distinguishes between work product that receives absolute

9   protection and that which receives qualified protection:

10     (a) A writing that reflects an attorney's impressions, conclusions, opinions, or
    legal research or theories is not discoverable under any circumstances.

11
12     (b) The work product of an attorney, other than a writing described in
    subdivision (a), is not discoverable unless the court determines that denial of
13  discovery will unfairly prejudice the party seeking discovery in preparing that
    party's claim or defense or will result in an injustice.

14  Cal. Civ. Proc. Code § 2018.030.

15      Subsection (a) absolutely protects "any writing reflecting the thoughts and

16  impressions of counsel or their legal team, even if the document also reflects non-

17  attorney opinions or contains only the attorney's notes about a witness's statements.

18  *Hawkins, supra*, at 74. This protected work product remains "absolute" even when

19  shared with client. *Id*, citing *BP Alaska Expl., Inc. v. Superior Court*, 199 Cal. App.

20  3d 1240, 245 Cal. Rptr. 682, 690-91 (Cal. Ct. App. 1988).

21      Indeed, attorney work product is so sacred that the Court "may not require

22  disclosure of information claimed to be privileged [as an attorney-client

23  communication] . . . or attorney work product in order to rule on the claim of

24  privilege" in a civil proceeding. Cal. Evid. Code § 915(a); see also *DP Pham, LLC*

25  *v. Cheadle*, 246 Cal. App. 4th 653, 200 Cal. Rptr. 3d 937, 947 (Cal. Ct. App. 2016)

26  (collecting cases and citing § 915(a) for the proposition that courts "must approach

27  the issue [of whether documents are protected by the attorney-client privilege]

28  without inspection of the documents themselves.") In limited circumstances, a court

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

10

1  may conduct an in camera review after determining the privilege is waived or some

2  other exception applies, for the purpose of "determin[ing] if some protection is

3  warranted notwithstanding the waiver or exception." *Id*. However, no such review

4  may be conducted "for any reason until the court determines the privilege does not

5  apply or has been waived." *Id*. (quoting *Costco*, 219 P.3d at 746).

> The work product privilege would be attenuated if it were limited to
> documents that were prepared in the case for which discovery is sought.
> What is needed, if we are to remain faithful to the articulated policies of
> *Hickman*, is a perpetual protection for work product, one that extends
> beyond the termination of the litigation for which the documents were
> prepared.  Any less protection would generate the very evils that the
> Court in *Hickman* attempted to avoid.

10  *In re Murphy*, 560 F.2d 326, 334 (8th Cir. 1977).

11       The *Weintraub* Court's analysis does not reach the same result when applied

12  to the instant action. In *Weintraub*, a federal agency sought attorney-client

13  communications in order to unearth a corporation's fraudulent misconduct. Here, the

14  Creditors seek to invade an attorney's thoughts and expressions of those thoughts.

15  Similarly, in *Weintraub*, the court was concerned with the debtor's corporate, day-

16  to-day activities.  Whereas the documents and communications sought by Creditors

17  were prepared and received in anticipation of or during litigation, which is

18  separately protected under both the California and Federal Rules of Civil Procedure.

19  Fed. R. Civ. P 502; Cal. Civ. Proc. Code, § 2018.030.

20       In this case, the effort to violate the work product doctrine is especially

21  pernicious as the Creditor's lawyers seek a window into the plans, opinion, and

22  strategy of Rikos to whom they are adverse in the resumed State Court Action.

23  Moreover, the instant subpoena is not the Creditors' first effort to pierce the

24  attorney-client relationship and obtain strategic information to which they are not

25  entitled.

26       In light of the State Court's refusal to abrogate the work product doctrine and

27  sanction a wholesale intrusion into the Creditors' opposing counsel's attorney-client

28  communications, it is perhaps no surprise that the Creditors have sought this

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

11

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

1    alternative tack.  However, the Trustee may only be the holder of the attorney client

2    privilege for another 90 days.  If the United States Trustee's Office's motion to

3    dismiss is granted, the Trustee is no longer the holder of the privilege. At a

4    minimum, it would seem, given the sacrosanct importance of attorney-client

5    privilege and the attorney work product doctrine, this Court should stay enforcement

6    of the Subpoenas until the Bankruptcy Court in Nevada can rule on whether to

7    dismiss the bankruptcy action and return the matter to State Court jurisdiction.

8    **B.**      **The Subpoenas Seek Communications Protected by the State Court**

9            **Action's Defendants' Joint Defense Agreement.**

10       The Bankruptcy Trustee does not have the authority to waive the joint defense

11    privilege that is shared by DOMI's co-defendant, Michael Pratt. Rikos Decl., ¶ 8.

12       The joint defense privilege applies to civil co-defendants. *In re Grand Jury*

13    *Subpoenas, 89-3 & 89-4, John Do 89-129 (Under Seal)*, 902 F.2d 244, 249 (4th Cir.

14    1990). This is true even when the co-defendants are corporate entities. *Continental*

15    *Oil Co. v. United States*, 330 F.2d 347 (9th Cir. 1964).  In *Continental Oil*, certain

16    employees and executives of appellants Standard Oil Company of California and

17    Continental Oil Company were summoned to testify before a federal grand jury. *Id.*

18    at 348. The corporations' counsel conducted interviews of the subpoenaed

19    individuals, then exchanged their memoranda in confidence to apprise each other of

20    the nature and scope of the inquiry. *Id*. Thereafter, the memoranda were subpoenaed

21    from the corporations and all persons moved to quash on the grounds of privilege,

22    which was denied by the district court. *Id* at 349.

23       The Ninth Circuit felt so strongly about breach of privilege, that it issued an

24    immediate ruling after the matter had been submitted. *Id.* at 348. The Ninth Circuit

25    found that a joint defense had been established by the parties and therefore their

26    exchanges were privileged.  It held:

27          The [joint defense] privilege asserted here is a valuable and an
          important right for the protection of any client at any stage of his

28         dealings with counsel. it is a vital and important part of the client's

12

1   right to representation by counsel. We think that to make the
2   limitations on this right sought to be urged by the United States would
    tend in substantial measure to destroy the privilege.

3   *Id.* at 350.[5]

4        The *Continental Oil* court was persuaded by language from the Superior

5   Court of Minnesota:

6        Where an attorney furnishes a copy of a document entrusted to him by
7        his client to an attorney who is engaged in maintaining substantially
         the same cause on behalf of other parties in the same litigation,
8        without an express understanding that the recipient shall not
         communicate the contents thereof to others, the communication is
9        made not for the purpose of allowing unlimited publication and use,
         but in confidence, for the limited and restricted purpose to assist in
10       asserting their common claims. The copy is given and accepted under
         the privilege between the attorney furnishing it and his client. For the
11       occasion, the recipient of the copy stands under the same restraints
         arising from the privileged character of the document as the counsel
12       who furnished it, and consequently he has no right, and cannot be
         compelled, to produce or disclose its contents."

13  *Continental Oil*, 330 F.2d at 350 [citations omitted].

14       The joint defense doctrine is not limited to attorney-client privilege

15  but also to the communications protected by the work product doctrine. *In re*

16  *Grand Jury*, 902 F.2d at 249. The court in *In re Grand Jury* found that two

17  entities – referred to as Movant and Subsidiary – were engaged in the joint

18  prosecution of a claim against the Army and the joint defense of Army's

19  counterclaim, and queried whether Subsidiary's waiver of attorney-client

20  privilege extended to Movant.  The court held Subsidiary could not waive

21  privilege for Movant because "persons who share a common interest in

22  litigation should be able to communicate with their respective attorneys and

23  with each other to more effectively prosecute or defend their claims." *Id.*  It

24  further concluded that a contrary finding "would not only be illogical but

25  would defeat the purpose of the rule." *Id.*

26  ───────────────

27  [5]   Because the court found that the communications were protected by attorney-
28  client privilege, it declined to consider whether the matters were also protected by
    attorney work product. *Continental Oil*, 330 F.2d at 350.

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

13

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

1      Here, DOMI maintained a joint defense and common interest privilege with

2 its co-defendants, as is common in multiple party litigation.  Rikos Decl., ¶ 8.

3 Because the Subpoenas request communications and work product between the co-

4 defendants' counsel and their respective law firms, the privileges of the co-

5 defendants are directly implicated.  DOMI, and therefore its counsel, Rikos, is

6 contractually bound by its agreement with its co-defendants and does not have the

7 authority to waive such privileges.  Further, such communications would serve no

8 legitimate purpose for a 2004 Examination.

9 **V.**

10 **The Court Must Quash or Modify the Subpoenas because the Sweeping**

11 **Document Requests Constitute an Oppressive Burden and There is Insufficient**

12 **Time for Rikos to Comply**

13      The Subpoenas seek documents and information which are not properly

14 discoverable. The scope of permissible discovery is dictated by Rule 26 of the

15 Federal Rules of Civil Procedure, which permits parties to discovery that which is

16 "relevant to any party's claim or defense and proportional to the needs of the case[.]"

17 Fed. R. Civ. P. 26(b)(1). Accordingly, the party seeking discovery must make

18 "[s]ome threshold showing of relevance . . . before parties are required to open wide

19 the doors of discovery and to produce a variety of information which does not

20 reasonably bear on the issues in the case." *Hofer v. Mack Trucks, Inc.,* 981 F.2d 377

21 (1992).  Further, because the Subpoenas were issued pursuant to Rule 2004, as

22 detailed above, "relevance" should be narrowed to that which is necessary to

23 ascertain the extent and location of DOMI's assets. *In re Hammond, supra,* 140 BR.

24 at 201.

25      But showing relevance is only the first step.  The party seeking discovery

26 must also show that the requested discovery is proportional to the needs of the case.

27 In considering relevance and proportionality, the Court looks to "the importance of

28 the issues at stake in the action, the amount in controversy, the parties' relative

14

access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1); *see Hawkins v. Kroger Co*., No. 3:15-cv-02320-JM-AHG, 2020 U.S. Dist. LEXIS 72311, at *19 (S.D. Cal. Apr. 23, 2020) (S.D.C.A.), and *Wiwa v. Royal Dutch Petroleum Co*., 392 F.3d 812, 818 (5th Cir. 2004) (Identifying six factors to determine whether a production subpoena presents an "undue" burden or expense, the courts consider a variety of factors, including: 1) Relevance of the information requested; 2) The need of the party for the production; 3) The breadth of the request for production; 4) The time period covered by the subpoena; 5) The particularity with which the subpoena describes the requested production; and 6) The burden imposed.)

Rule 45 presents yet another hurdle.  A party responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. Fed. R. Civ. P. 45(d)(1). The Court must enforce this duty and impose the appropriate sanction – which may include lost earnings and reasonable attorney's fees – on a party or attorney who fails to comply. *Id.*

On a motion to quash a subpoena, the moving party has the initial burden of persuasion, but the party issuing the subpoena must demonstrate that good cause exists for the taking of the requested discovery. *Freeman v. Seligson,* 405 F.2d 1326, 1336 (D.C.Cir.1968); *In the Matter of Wilcher,* 56 B.R. 428, 434 (1985).  Good cause ordinarily may be shown if the examination and requested documents are necessary to establish the claim of the party seeking the examination production, or that denial of such request would cause it undue hardship or injustice. *Boeing v. Coggeshall,* 280 F.2d 654, 670 (D.C.Cir. 1960).  If the requesting party comes forward with sufficient evidence of good cause, the burden shifts to the party opposing the examination. *In re Hammond*, 140 B.R. 197, 201 (1992).

The Creditors' document requests exceed that which is necessary for the

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

1   Trustee to locate and marshal DOMI's assets, and impinge on Rikos' right to be let

2   alone, by saddling him with a burden of production that should be borne by the

3   debtor.  The Trustees have not, nor can they, overcome their burden to show good

4   cause for their extensive demands.

5   **A.      The Subpoenas are premature because Creditors failed to take**

6   **          reasonable steps to mitigate the burden on Rikos.**

7            While DOMI has availed itself to the burdens and benefits of the Bankruptcy

8   court, Rikos has no dog in that fight and should not suffer the wrath of DOMI's

9   creditors. Where possible, documents and communications should first be sought

10  from DOMI. At present, Creditors have not conducted any 2004 examinations.

11  Instead, they aimed their first attack directly at Rikos, to pierce the attorney client

12  protections, before a court unfamiliar with their prior attempts and State Court

13  admonishments.

14           Rule 45 requires that the serving party take reasonable steps to avoid

15  imposing undue burden or expense on a person subject to the subpoena. Fed. R. Civ.

16  P. 45(d)(1). The Creditors should not seek from Rikos what they can just as easily

17  get from DOMI.  *See, e.g. Haworth, Inc. v. Herman Miller, Inc.,* 998 F.2d 975, 978

18  (Fed. Cir. 1993) (affirming district court's decision to require Defendant "to seek

19  discovery from its party opponent before burdening the non-party… with this

20  ancillary proceeding"). Yet the Creditors do precisely that. They request, for

21  instance, "All DOCUMENTS and COMMUNICATIONS. . ." concerning "The

22  transfer of Michael Pratt's interest in DOMI to Douglas Wiederhold and/or DOMI,"

23  (Request 1.b.) and "Financial transfers from DOMI to Douglas Widerhold, Ryan

24  Somavia, Michael Pratt, Matthew Wolfe, their agents, representatives, or attorneys

25  and/or any entities owned, partially owned, controlled or partially controlled by

26  Wiederhold, Somavia, Pratt and/or Wolfe, directly or indirectly." (Request 1.f.)

27           By drafting Subpoenas directed at DOMI's counsel, which include demands

28  for hundreds of thousands of documents, pertaining to multiple legal entities and

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

16

1   individuals, and invade the subjective thoughts and strategies of Rikos, the Creditors

2   have flouted their obligations under Rule 45. Instead, they endeavor to impose a

3   heavy burden on Rikos, which is a single person law firm, without the resources to

4   efficiently and cost effectively address the demand placed on it.  Indeed, Rikos is

5   also a creditor of DOMI, owed in excess of $100,000 in fees from the underlying

6   litigation and suffering the ongoing financial strains of having conducted a three

7   month trial with only partial compensation and additional hardship  attendant to the

8   COVID-19 lockdowns.  Rikos Dec. ¶ 28.

9          It is improper to impose such heavy document production obligations on

10   Rikos, without any showing  that such information is not readily available from

11   DOMI itself.

12   **B.      The Subpoenas are overbroad, unnecessary, and unmanageable.**

13          Far from demonstrating any effort to avoid overbroad requests and

14   definitions, the Subpoenas epitomize a fishing expedition. Starting with the

15   definition of "YOU and/or YOUR," which includes not only George D. Rikos and

16   his law firm, but also *any* of Rikos's agents, representatives and/or attorneys.  As

17   worded, this includes third party entities who have provided Rikos with litigation

18   support, and his *own* counsel (which would also be separately protected by

19   privilege).

20          Similarly, the Creditors extended their definition of "COMMUNICATION"

21   to include any communications "between and/or among: YOU, DOMI, Douglas

22   Wiederhold, Michael Pratt, Clyde DeWitt, Aaron Sadock, Daniel Kaplan, Matthew

23   Zirzow, Ryan Somavia, Noam Glick, Matthew Wolfe," or any of *their* "agents,

24   representatives, or attorneys."  This expansive definition would likely include over

25   dozens of individuals and entities and leave Rikos with the impossible task of

26   checking every corporate nook and cranny, then reviewing thousands upon

27   thousands of documents to avoid the improper production of a document protected

28   by attorney client privilege in another case.

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

17

1        Moreover, the Creditors already have access to all of the documents that

2   comprise the court filings, which consists of over 3,000 docket entries in the

3   consolidate State Court Action alone. Insisting on the re-production of these files

4   constitutes an inordinate waste of time with no apparent benefit other than to force

5   Rikos to incur exorbitant costs in compilation and storage to produce.

6   **C.   Rikos lacked time to adequately respond to the Subpoenas.**

7        The Subpoenas fail to allow Rikos a reasonable time to comply.  To fully

8   comply with the Subpoenas, Rikos would be required to download and process tens

9   of thousands of emails, identify appropriate key words, review each email for

10   responsiveness, and redact them, as appropriate. Many of those thousands of emails

11   also contain attachments, which would also need to be downloaded, extracted, and

12   reviewed.  All of this is in addition to the review of the document file, which consist

13   of well over 22 gigabytes of data. Rikos Decl., ¶ 26.

14        In order to perform the above-described document production, Rikos would

15   be required to retain an e-discovery provider to assist with the document extraction,

16   review and production.  This was not an achievable task in the mere 14 day notice

17   he was provided. To adequately comply with *any* document request that requires the

18   collection and review of his entire email and document files, Rikos requests

19   substantially more time, no less than 90 days.

20   **D.   Rule 45 Requires the Creditors to pay the significant costs of compliance.**

21        Under Rule 45, this Court "must protect" Rikos "from significant expense

22   resulting from compliance."  Fed. R. Civ. P. 45(d)(2)(B)(ii).  "Rule 45(d)(2)(B)(ii)

23   requires the district court to shift a non-party's costs of compliance with a subpoena,

24   if those costs are significant."  *Legal Voice v. Stormans, Inc.*, 738 F.3d 1178, 1184

25   (9th Cir. 2013); *see also Linder v. Calero-Portocarrero*, 251 F.3d 178, 182 (D.C.

26   Cir. 2001.) The cost to comply with the Subpoenas would be significant by any

27   definition. *See* e.g., *Legal Voice,* 738 F.2d at 1185 ("we have no trouble concluding

28   that $20,000 is significant'"). The imposition of such a cost on a solo practitioner,

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

18

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DOMI PUBLICATIONS, LLC'S
MOTION TO QUASH SUBPOENAS

1  who himself is a substantial creditor of the debtor's estate, and is navigating a

2  significant economic downturn in the midst of a pandemic, would be

3  unconscionable.  Thus, if the Court is not inclined to quash the Subpoenas in their

4  entirety, Rikos respectfully requests he be reimbursed by Creditors for the

5  reasonable cost of compliance, including his lost time.

### VI.

### <u>Conclusion</u>

8      For the foregoing reasons, Rikos respectfully urges the Court to quash the

9  Subpoenas in their entirety or, alternatively, issue an order (1) exempting documents

10  and testimony covered by the attorney work product doctrine and joint defense

11  privilege; (2) exempting documents which Creditors can obtain from the debtor

12  DOMI directly or which were previously disclosed through discovery or in public

13  filings; (3) extending the date of compliance with the Subpoenas by a minimum of

14  ninety (90) days; and (4) requiring Creditors to pay for the reasonable cost of the

15  collection, review, and production of responsive documents.

KLINEDINST PC

DATED:  May 8, 2020          By:  _____/s/ Earll M. Pott_____

Heather L. Rosing
Earll M. Pott
Tara R. Burd
Attorneys for George Rikos and the Law
Offices of George Rikos

18407517.6

501 West Broadway, Suite 600
San Diego, California 92101
Klinedinst PC

19